UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————x

THE NEW YORK CITY DEPARTMENT OF EDUCATION,
                              Plaintiff,

                                                    09 Civ. 810 (CM)

-against-


S.S., on behalf of herself and her minor child, Sm.S., and
COOKE CENTER FOR LEARNING AND DEVELOPMENT,
INC.,
                              Defendants.
————————————————————————————x


### DECISION AND ORDER GRANTING THE MOTIONS TO DISMISS OF DEFENDANTS S.S. AND COOKE CENTER FOR LEARNING AND DEVELOPMENT AND DENYING THE MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF NEW YORK CITY DEPARTMENT OF EDUCATION

McMahon, J.:

This case concerns the allocation of financial responsibility for private school tuition for a student with a disability during the pendency of due process proceedings under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et* seq. ("IDEA"). Under IDEA, a student with a disability is entitled to remain in the student's last "agreed-on" educational placement at taxpayer expense while such due process proceedings are pending. Long-settled rules and numerous decisions of this and other courts provide, plainly and unmistakably, that the school district must pay the costs of a child's education at a private school for as long as the private school is the child's pendency. The statute and the regulations also plainly (and mandatorily) provide that a child's pendency placement *shall not change* during those due process proceedings. Pendency changes only when there is an agreement between the parents and the district, or when the highest reviewing administrative officer (in New York, the State Review Officer or an Impartial Hearing Officer if no one appeals his/her decision) concludes that the

child's placement should be changed.  34  C.F.R. § 300.518(d).

The New York City Department of Education ("Department") now insists that these well-settled rules do not in fact exist.  Although the Department acknowledges that it was required to advance the child Sm.S.'s private school tuition during hearing and appeal process, it argues that it a right, under equitable principles applicable under both  IDEA and the common law, to be reimbursed for those outlays now that a State Review Officer (SRO) has concluded that the Individualized Education Plan (IEP) proposed for the child would have afforded him a Free Appropriate Public Education (FAPE) during the 2007-2008 school year.

But as a matter of law, a school district's responsibility for funding a child's private school education continues until the moment when the child's pendency changes.  In this case, Sm.S.'s pendency did not change until the State Review Officer affirmed the Independent Hearing Officer's conclusion that the city had offered him a FAPE for the 2007-08 school year.  The pendency-changing decision came down on September 30, 2008 – after the school year in issue was over.  Only then did the child's parent become liable for private school tuition – and only on a going-forward basis.  Any holding otherwise would undermine Congress' explicit instruction that a disabled child's learning environment should not change until there was a final administrative determination that change was appropriate; it would also prejudice the ability of a certain class of parents – those who cannot afford to send their children to private school – to exercise the due process rights granted to them by Congress.

There may be valid policy reasons why the Department's position ought to be the law.  It is absolutely true that the current scheme effectively allows the parents of children whose pendency is private school to obtain a year (or more) of publicly-financed private school tuition, because due process proceedings are seldom (the court should say, never) completed in the expeditious manner contemplated by Congress when it passed IDEA.  The current rule also treats

two groups of parents differently.  Parents who pull their children out of a public school pendency when public school is the child's pendency do so "at their [financial] peril." <u>Burlington Sch. Comm. v. Dep't of Educ.</u>, 471 U.S. 359, 373-74 (1985) – that is, they can only recover tuition for the period when they child was in violation of his "stay put" placement if they win their challenge to the district's IEP.  But parents like S.S., whose child has a private school pendency, can continue to receive publicly-funded private schooling for their children simply and solely because of the pendency rules – even if their challenge to the IEP fails.

But it is not for this or any court to change the rules, or to take cognizance of a common law claim of unjust enrichment that would circumvent the IDEA – a statute that preempts all state and local laws and rules to the contrary.  The Department's recourse is to petition Congress for an amendment to IDEA.  Absent that, it is not entitled to be reimbursed for tuition paid on SmS's behalf during the 2007-08 school year.

The Department's motion for sumtary judgment ordering the parents to reimburse it for tuition paid during the pendency of due process proceedings (Docket No. 31) is denied.  Defendant S.S.'s motion to dismiss the complaint (Docket No. 22) is correspondingly granted.

Finally, this is a dispute between the district and the parents.  The private school that was the child's pendency placement, the Cooke Center for Learning and Development, Inc., is not a proper party to any proceeding for relief under IDEA.  And since IDEA completely preempts any state or local law, the Department cannot maintain a claim for unjust enrichment against Cooke.  And cvcn if the Department could bring an unjust enrichment claim in these circumstances, there is nothing "unjust" about requiring someone, be it the district or the parent, to pay the school for educational services actually provided.  The Department's vision of "collusion" between parents and private schools is not borne out by the terms of the contract between S.S. and Cooke –a

3

contract that the Department misreads. Cooke's motion to dismiss is, therefore, granted.

## STATEMENT OF FACTS

The following facts are undisputed:

At the start of the school year at issue, which is the 2007-2008 school year, the student, Sm.S. (the "Student"), was a seven-year old child who had been classified under the IDEA as a student with a disability (speech and/or language impairment). 20 U.S.C. § 1401(3)(A)(i); (SF, ¶1). Defendant S.S. is the student's mother ("Parent" or "S.S."). Id.

During the 2005-2006 and 2006-2007 school years, the Student attended the private school operated by defendant Cooke Center for Learning and Development ("Cooke"). (SF, ¶2). The tuition was paid by the New York City Department of Education ("Department"). (SF, ¶12). Cooke was, as a matter of law, the child's pendency placement.

On May 14, 2007, the Department convened a Committee on Special Education ("CSE") to formulate a new individualized education program ("IEP") for the Student for the 2007-08 school year. (SF, ¶3). S.S. participated in that process, along with a school psychologist, two special education teachers, a school social worker, the parent of another child with disabilities, a site supervisor, and a speech therapist. (Cplt. 14).

On May 30, 2007 — before the CSE had finalized a recommendation for the child — S.S. signed a contract to re-enroll Sm.S. at Cooke for the 2007-08 school year. (Cplt. ¶15). The contract stated, "In the event [the parent] *has* been *offered* a public school placement for their [sic] child, the Parent has chosen to reject the public school placement in favor of placing his/her child in the Cooke Center Program." (Pl. Ex. B at **3**) (Emphasis added). At the time the contract was signed, the district had not yet offered the parents a public school placement for Sm.S., and S.S. had not yet rejected any such placement. Thus, this provision of

the contract has no bearing on the arrangement between S.S. and Cooke.

      A different contract provision, however, is pertinent to Sm.S.'s enrollment at Cooke. It gives parents who had not yet received or rejected a public school placement – people like S.S. – the option of withdrawing their children from Cooke *without financial penalty* if they were offered and accepted a public school placement after signing the contract. If the parent accepted such a placement prior to September 30, 2007, S.S. would be released from any responsibility for making any tuition payment whatever. (Id. at 2). And if the parent accepted such a placement after September 30, 2007, the parent ". . . will only be responsible for a pro-rated tuition cost based on the number of months in which [the child] attended the Cooke Center program." (Id. at 2). Nothing in the Cooke Center contract required a parent who had not yet received a public school placement to turn down such a placement if one was offered.

      As is customary, the contract obligated the parent, not Cooke, to seek payment for the child's tuition from his school district. By signing the contract, however, the parent became obligated to pay tuition for the school year in the event the district did not pay it. (SF, ¶¶ 5-8).

      On or about June 26, 2007, the Department sent S.S. a Final Notice of Recommendation, offering Sm.S. a placement in P.S. 161 for the 2007-08 school year. The Committee's recommended IEP provided that the child would receive:

> placement in a 12:1+1 special class in a community school with related services for counseling and speech-language therapy for the 2007-2008 school year. The Committee on Special Education recommended one 30-minute session per week of counseling in a 1:1 setting; one 30 minute session per week of counseling in a 3:1 setting; and three 30-minute sessions per week of speech-language therapy in a 1:1 setting.

(SRO Decision at 6).

      S.S. explored the proposed placement. She contacted the assistant principal of P.S. 161 in July, but was told to call back in August. (SRO Decision at 7). By letter dated August 8, 2007,

S.S. told the district that she would neither accept nor reject the placement until she had an opportunity to observe a classroom. During the first week of September, and again on September 26, 2007, S.S. visited the recommended placement and spoke with the special education teacher, the site supervisor and the speech therapist. (Id.) Meanwhile, Sm.S. began the school year at Cooke.

By letter dated September 27, 2007, S.S. rejected the placement, based on her concerns that the proposed services for Sm.S.'s speech-language and auditory processing needs were inadequate. (Id.) The letter indicated that she would seek a due process hearing, and advised that her child would remain at Cooke pending the results of that hearing. (Id.)

On November 9, 2007, S.S. filed her request for an impartial hearing, claiming that the Department failed to offer the Student a free appropriate public education ("FAPE") for the 2007-2008 school year, and requesting payment of the Cooke tuition. (SF, ¶10).

On March 25, 2008, the Impartial Hearing Officer issued a Findings of Fact and Final Order on Pendency. He found that the child's pendency was either Cooke or another private school that offered a program identical to Cooke's. Since none had been identified, he ordered the Department to fund the student's tuition at Cooke until the conclusion of the due process proceedings. (IHO Decision, Mar. 25, 2008 at 8-9).

A 3-day hearing was held in April and May 2008, to consider S.S.'s claim that the Department failed to offer the Student a FAPE. (SF, ¶13). On May 29, 2008, the Impartial Hearing Officer issued a corrected Findings of Fact and Final Order. (Id. ¶14). The IHO found that the Department's recommended program would have provided the student with a FAPE during the 2007-2008 school year. (Id.) However, the IHO ordered the Department to continue funding the student's private school education through the end of June 2008, because it was so

close to the end of the school year.  (Id. ¶¶15-16).

The Department appealed so much of the Hearing Officer's decision as required it to pay Sm.S.'s Cooke tuition through the end of the school year to the State Education Department's Office of State Review ("SRO").  It also sought reimbursement for all funds paid to maintain the child in his pendency placement, on the ground that it had offered a FAPE all along.  (SF, ¶17). S.S. cross-appealed.  (SF, ¶18).

In a decision dated September 30, 2008, the SRO upheld the Hearing Officer's decision that the Department had offered the Student a FAPE for the 2007-08 school year.  (SF, ¶19). The SRO also agreed with the Department that the Hearing Officer had erred in ordering the Department to pay for the Student's tuition at Cooke from the date of the IHO's decision through the end of the 2007-2008 school year, saying the Hearing Officer's decision was incorrect "in light of his conclusion that the district offered the student a FAPE." (SRO Decision at 17). However, the SRO concluded that that issue was moot, because the tuition payment was nonetheless required under the Hearing Officer's pendency order.  (SF, ¶20).  The SRO dismissed the Department's request for reimbursement of tuition paid from and after May 29, 2008, saying, "the remedy sought by the district...has been rendered moot because a determination of the issue would no actual effect on the parties given the district's continued obligation to fund the student's placement at Cooke under pendency through the conclusion of the instant administrative and/or judicial proceedings." (SF, ¶21; SRO Decision at 18).

S.S. has nor appealed the SRO's determination that the District had offered her child a FAPE for the school year 2007-2008, so that issue is not before the court.  The only issue confronting me is whether the Department, having offered the Student a FAPE that was rejected by S.S., is entitled to reimbursement of the funds it advanced during the pendency of the

administrative proceedings to maintain the Student at Cooke.  (SF, ¶24).

The answer is no.

## CONCLUSIONS OF LAW

### A.  The Statutory Scheme

Congress enacted the Individuals with Disabilities Education Act ("IDEA) pursuant to

the Constitution's spending clause for the purpose of promoting the education of students with

disabilities.  Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 295 (2006). The

IDEA provides that the school district of residence of a child with a disability must offer that

child a "free appropriate public education" ("FAPE").  20 U.S.C. § 1400(d)(1)(A).  FAPE is

defined as special education and related services, provided at public expense, which meet the

standards of the State educational agency and are provided in conformity with an Individualized

Education Program ("IEP").  20 U.S.C. §§ 1401(9), 1414(d).  A school district, such as the

Department here, meets its obligation to offer FAPE by having a CSE, which must include the

Parent, convene prior to each school year and prepare an IEP for the student, setting forth the

goals and objectives for the student, and recommending an educational program and related

services to attain those goals and objectives.  20 U.S.C. § 1414(d).

If a parent believes that the education program proffered by a school district does not

offer a FAPE, IDEA provides "procedural safeguards that enable parents and students to

challenge the local educational agency's decisions." Murphy v. Arlington Cent. Sch. Dist., 297

F. 3d 195, 197 (S.D.N.Y. 2002).  The parent may file a due process complaint "with respect to

any matter relating to identification, evaluation or educational placement of the child, or the

provision of a free appropriate public education." 20 U.S.C. 1415(b)(6)(A); see also 34 C.F.R.

300.507(a)(1) (2007) ("A parent or a public agency may file a due process complaint on any of

the matters described in § 300.503(a)(1) and (2) (relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the child.)"). School districts may also request due process hearings relating to, among other things, the educational placement of a student or the provision of FAPE to the student.  20 U.S.C. § 1415(b)(6); N.Y. Educ. Law § 4404(1).

States are required to devise procedures to carry out this review process.  20 U.S.C. 1415(a); see also 34 C.F.R. §§ 300.507-13.  In New York, there is a two-tiered process for reviewing IDEA due process complaints.  Claims are first heard by an impartial hearing officer. N.Y. Educ. L. § 4404(1).  An IHO's determination can be further appealed to a State Review Officer.  N.Y. Educ. L. § 4404(2). Either the parent or the district may seek judicial review of an SRO's decision in a state or federal court.  20 U.S.C. § 1415(i); 34 C.F.R. § 300.516; N.Y. Educ. L. § 4404(3).  Courts have been granted broad authority under the IDEA to grant whatever relief they deem appropriate.  20 U.S.C. § 1415 (i)(2); Forest Grove Sch. Dist. v. T.A., No. 08-305, 2009 U.S. LEXIS 4645, at *17 (U.S. June 22,2009); Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 369 (citing Burlington, 471 U.S. at 369-70); see also Winkelman v. Parma City Sch. Dist., 550 U.S. 516. 529 (2007).

IDEA dictates where the child should attend school during the pendency of due process proceedings: "During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed." 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518.  The Second Circuit has observed that the pendency provision represents, "Congress' policy choice that all handicapped children, *regardless of whether their case is meritorious or not*, are to remain in their current educational

9

placement until the dispute with regard to their placement is ultimately resolved. <u>Mackey v. Bd. of Educ.</u>, 386 F. 3d 158, 160-62 (2d Cir. 2004) (Emphasis added). The "current educational placement" is the place where the child is receiving services at the time the hearing request is made. <u>Letter to Hampden</u>, 49 IDELR 197 (Sept. 4, 2007). In this case, there is no dispute that the child's pendency placement was at Cooke, by virtue of an unappealed IHO decision ruling that the Department had not offered Sm.S. a FAPE for the 2005-2006 and 2006-2007 school years.[1] (SF, ¶2; IHO Decision Mar. 25, 2008 at 2).

The requirement that the student "stay put" in his or her current placement has the effect of an automatic preliminary injunction, one imposed without regard to such factors as irreparable harm. likelihood of success on the merits, and the balancing of hardships. <u>C.P. v. Leon County Sch. Bd.</u>, 483 F.3d 1151, 1156 (11th Cir. 2007), <u>cert. denied</u>, 128 S.Ct. 232 (2007); <u>Zvi D. v. Ambach</u>, 694 F.2d 904, 906 (2d Cir. 1982). The purpose of the stay-put provision is to "maintain[] the status quo and ensur[e] that schools cannot exclude a disabled student *or change his placement without complying with the due process requirements.*" <u>C.P.</u>, 483 F.3d at 1156; <u>Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.</u>, 88 F.3d 1466, 1472 (6th Cir. 1996) (Emphasis added). "Stay put" is mandatory, not discretionary with either the parent or the district. ("….the child *shall remain* in the then-current educational placement….").

Part of the "stay put" scheme is that responsibility for private school tuition "stays put" as well. Thus, if the district has been paying for private school tuition, the district must continue to do so until the moment when the child's pendency officially changes – either when there is an agreement between the parents and the district, or when and SRO hands down a pendency-altering decision. By contrast, if a child's pendency is in the public school when due process

---

[1] The IHO was, therefore, wrong when he said that the child's pendency was his program, rather than the Cooke Center. (<u>See</u> IHO Decision, Mar. 25, 2008 at 8). A program is not a "place" where educational services are rendered. A school is a place.

proceedings commence, a parent who unilaterally places the child in a private school setting pending the completion of his appeal does so at his own financial risk.  <u>Burlington</u>, <u>supra</u>, 471 U..S. at 373-74.

Regrettably, due process proceedings take far longer to complete than Congress contemplated they would.  When passing IDEA, Congress mandated that, "If the local educational agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all of the applicable timelines for a due process hearing under this subchapter shall commence." 20 U.S.C. § 1415(f)(1)(B)(ii); <u>see also</u> 34 C.F.R. § 300.510(a); 34 C.F.R. § 300.515(a) (following the 30 day "resolution period", a final decision should be mailed to the parties within 45 days).  However, the Supreme Court has recognized that a "final judicial decision on the merits of an IEP will in most instances come a year or more after the school term covered by that IEP has passed." <u>Burlington</u>, 471 U.S. at 370.  Thus, the pendency scheme almost invariably leads to school districts' advancing the cost of private school tuition for an entire school year, and sometimes beyond, based on pendency alone – even where, as is the case here, the district met its obligation to offer the child a FAPE in a public school setting.  Nonetheless, a school district is obligated to maintain the child's pendency placement until the child's pendency changes.  <u>Bd. of Educ. v. Engwiller</u>, 170 F. Supp. 2d 410, 414 (S.D.N.Y. 2001).

The Department asserts that the SRO erred in making the district responsible for the payment of SmS.'s private school tuition from the time the parent filed her due process challenge until the end of the 2007-08 school year.  It acknowledges that. under relevant case law, it had *interim* financial responsibility for pendency expenses.  But it urges that it should not have to bear *ultimate* responsibility for those expenses now that it has been found that the proposed IEP

would have offered a FAPE in a public school setting.  Put otherwise, the Department argues that parents who keep their children in a private school pendency during due process proceedings should in the end be treated no differently than parents who remove their children from a public school pendency and place them in private school during such proceedings: they do so at their own financial risk.

But before discussing the relevant case law, there are two jurisdictional matters that the court must address.

**B.**  **This Court has subject matter jurisdiction over all of the Department's claims and the Department has standing to bring them.**

S.S. seeks dismissal of this action on the ground that the court lacks jurisdiction over the claims asserts.  However, IDEA states that district courts shall have jurisdiction of actions arising from IDEA administrative proceedings.  20 U.S.C. § 1415(i)(3)(A); see also 20 U.S.C. § 1415(i)(2)(C)(iii).  This simple and direct grant of jurisdiction empowers the Court to consider all claims regarding the decisions of the SRO.  The Court has supplemental jurisdiction over the unjust enrichment claim because it is part of the same case and controversy as the Department's reimbursement claim.  28 U.S.C. § 1367(a).

S.S. argues that this Court lacks subject matter jurisdiction because the IDEA limits the types of claims that may be brought under the Act, and the Department's claim for reimbursement docs not fall into any of IDEA's enumerated categories of claims.  S.S. Motion Memo at 27-29.  Defendant is mistaken.  IDEA provides that proceedings can be brought pertaining to "*any matter related to* the . . . educational placement of the child or the provision of a free appropriate education to such child." 20 U.S.C. § 1415(b)(6)(A) (Emphasis supplied). This statutory section provides "a wide range of review" and permits "challenges based on a broad range of issues." Winkelman, 550 U.S. at 527, 530.  Whether the parent or the Department

is ultimately responsible for paying Sm.S.'s tuition for the 2007-2008 school year is a matter that

relates both to the educational placement of the child and to the district's obligation to provide

the child with a free appropriate public education.  The claim fits squarely into the area set forth

by the statute.  See Burlington, 471 U.S. at 370, 374; accord Florence County Sch. Dist. Four v.

Carter, 510 U.S. 7, 12-14 (1993).

That IDEA does not expressly provide school districts with a right of action for

reimbursement of tuition paid during pendency is of no moment.  IDEA does not explicitly

provide parents with a private right of action for tuition reimbursement, either; nonetheless, the

Supreme Court has recognized a private right of action for tuition reimbursement when brought

by the parent.  Burlington, 471 U.S. at 369-70; see also S.W. v. New York City Dep't of Educ.,

No. 07 Civ. 9812, 2009 U.S. Dist. LEXIS 26500, at *1-2 (S.D.N.Y. Mar. 30, 2009).  This

compels the conclusion that a district court can similarly assert jurisdiction over a school

district's comparable claim for reimbursement of private school tuition advanced during due

process proceedings.

S.S. also errs when she insists that the Department lacks standing to seek review of that

portion of the SRO's decision in which he refused to address the Department's reimbursement

claim.  The IDEA broadly states that "any party aggrieved by the findings and decision made" by

the SRO "shall have the right to bring a civil action in any State court of competent jurisdiction

or in a district court of the United States." 20 U.S.C. § 1415(i)(2)(A) (Emphasis supplied).  This

is an express grant of standing provided by the statute to all parties aggrieved by the

administrative process to appeal the final administrative decision in state or federal court.  See

Warth v. Seldin. 422 U.S. 490, 524 (1975).

In essence, S.S. contends that the court lacks jurisdiction and the Department lacks

standing because plaintiff's position on the issue to be adjudicated. lacks merit. I agree with S.S.

on the merits, but that does not divest the court of jurisdiction or the plaintiff of standing – it

means only that the Department's claims must be dismissed after full consideration.

**C.      Plaintiff's Motion for Summary Judgment against S.S. is Denied, and Defendant S.S.'s Motion to Dismiss is Granted.**

The United States Court of Appeals for the Second Circuit has held that a school district

is financially responsible for maintaining a student's placement in a private school during the

pendency of due process proceedings.  As long ago as <u>Zvi D. v. Ambach</u>, the Circuit concluded,

"Implicit in the maintenance of the status quo is the requirement that a school district continue to

finance an educational placement made by the agency and consented to by the parent before the

parent requested a due process hearing. *To cut off public funds would amount to a unilateral*

*change in placement, prohibited by the Act.*" 694 *F.* 2d 904, 906 (2d Cir. 1982) (Emphasis

added); <u>see also Bd. of Educ. v. Ambach</u>, 612 F. Supp. 230, 233-34 (E.D.N.Y. 1985)

("Maintenance of the status quo requires not only that the child remain in the same placement,

but also that no change in financing of that placement occur during the pendency of

proceedings.") The Department acknowledges as much.

But contrary to the Department's assertion, the Circuit has gone further, and has in fact

agreed that the Department's responsibility for pendency tuition paid during a due process

challenge is absolute, and not subject to recovery.   In <u>Bd. of Educ. v. Schutz</u>, 290 F. 3d 476, 484

(2d Cir. 2002), <u>cert. denied</u>, 537 U.S. 1227 (2003), the Second Circuit squarely ruled that the

District remains financially responsible for a child's education, "Until a new placement is

established by either an actual agreement between the parents and the District, or by an

administrative decision upholding the District's proposed placement which [the parents] choose

not to appeal, or by a court…."

14

In Schutz, the child's pendency for the 1999-2000 school year (the year at issue) was in private school, which he had attended since September 1995. The child's pendency in private school was established by an SRO's decision in September 1997. The district contended that its 1999-2000 IEP for the child was adequate, but the parents rejected it and sought an impartial hearing. At the administrative hearing (which was held well after the end of the school year in question), the parents invoked the pendency rule and asked for an interim ruling that the district be ordered to pay their son's 1999-2000 tuition *pendente lite*. The IHO issued an interim ruling denying the parents' claim for pendency reimbursement. The SRO overturned the IHO's pendency ruling and ordered the district to reimburse the Schutzes for their son's 1999-2000 tuition, because it related to services rendered "during the pendency of proceedings." The school district brought an action in the district court seeking to overturn the SRO's order; that action was dismissed for failure to state a claim. The district appealed to the Second Circuit, where it lost again.

Before the Circuit, the district "argue[d] that the language of the pendency provision in the IDEA does not provide for reimbursement of private school tuition in contravention of" a provision in IDEA that authorizes payment to parents of private school tuition "if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner." The district contended that the relationship between two different sections of IDEA – §§ 1412(a) and 1415(j) – meant that "a school district's act of proposing a new IEP for a new school year abrogates the application of the 'stay put' provision for the academic year covered by the proposed IEP. Schutz, supra., 290 F. 3d at 483.

The Court of Appeals rejected that reading of the statute, saying that it would "undermine entirely the pendency placement provisions of the IDEA." Id. It concluded that the child's

"current educational placement" was the placement approved by last administrative decision — in Schutz, a private school placement — which made the district liable for the child's private school tuition *until the pendency changed*. Id.

In the case at bar, the Department makes essentially the same argument that the district made in Schutz. But it contends that the result should be different because, in this case, the parents ultimately lost on their claim that the district failed to provide a FAPE for their child, whereas in Schutz, the parents ultimately prevailed.   In essence, the Department argues that a school district's liability for payment of a child's educational expenses during the pendency of a due process proceeding should be deemed a temporary fee shifting arrangement, subject to adjustment once the merits are decided.

So the issue to be decided is whether the result of the parent's due process challenge is a difference that makes a difference to who bears ultimate responsibility for the cost of a child's education during the pendency of due process proceedings.

S.S. contends that the Second Circuit has already rejected the Department's position, in Mackey v. Bd. Educ., 386 F.3d 158 (2d Cir. 2004).  The facts in Mackey (with which this court has more than passing familiarity) are complicated.  The cited decision involved but one in a series of parental challenges to IEP's prepared for their son between 1997 and 2002.  In the case relied on by defendant, the issue actually decided was whether the district court had equitable power under IDEA to order pendency tuition reimbursement to parents when the decision changing the child's pendency from public to private school was substantially delayed.  The Circuit concluded that it did.

However, S.S. is correct when she asserts that, in Mackey, the Court of Appeals authorized an award of private school tuition under pendency principles, even though the parents

ultimately lost on their claim that the district failed to offer a FAPE for the relevant school year. The Mackey court emphasized that § 1415(j) represents "'Congress' policy choice that all handicapped children, *regardless of whether their case is meritorious or not,* are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved.'" Id. at 160–61 (quoting Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 83 (3d Cir. 1996) (Emphasis added in Mackey). The necessary and unavoidable inference from Mackey is that a school district has no right under the IDEIA to recoup pendency tuition payments from a parent.

Of course, the Department is also correct when it says that the Second Circuit did nto squarely address that issue in Mackey. At best,the Court of Appeals endorsed the principle on which S.S. relies *sub silentio.* But the Court of Appeals could not have reached the conclusion it reached without fist deciding that the victorious district was responsible for payment of the *pendent lite* pendency expenses regardless of the outcome of the due process hearing. The logic of the decision rests on that premise.

Moreover, in Mackey, the Court of Appeals relied on, and strongly endorsed, the views expressed in the opinion of my colleague, The Hon. Charles S. Haight, in Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ, 86 F. Supp 2d 354 (S.D.N.Y. 2000). And in Murphy, Judge Haight opined (albeit in dictum) that:

> The District's claim for recoupment in that circumstance may be problematical. I note that in *Clovis* [903 F. 2d 635 (9th Cir. 1990)], the [Ninth Circuit] held that the school district and the state were responsible for the child's stay-put costs regardless of which party prevailed on appeal.........the Supreme Court implied as much as Burlington....The IDEA affords the right to a free and appropriate education. This right is not altered when parents exercise their procedural rights to contest a placement recommendation....Parents should not be held accountable for the cost of a placement to which the state or school district has not "agreed." Otherwise, the stay-put provision is rendered meaningless.

Id. at 367 n. 9.

Given the result in Mackey, I have no reason to believe that the Circuit would do anything other than endorse Judge Haight's views again were it to focus squarely on the issue that is before me today. Certainly that is how district courts in this Circuit understand Mackey. Since that case was decided, this court has awarded pendency tuition reimbursement to parents even though it was held that their FAPE-based claim was without merit using Burlington analysis.  See Arlington Cent. Sch. Dist. v. L.P., 421 F. Supp. 2d 692, 700–03 (S.D.N.Y. 2006); Brennan v. Reg'l Sch. Dist.  No. 1 Bd. of Educ., 531 F. Supp. 2d 245, 265 (D. Conn. 2008) ("[I]n some circumstances, the stay-put provision requires that the child be placed in a private setting. In those cases, the parents are entitled to reimbursement for their expenses, even if the parents are unsuccessful in their claim for reimbursement based on a denial of FAPE." (citing Mackey)); Gabel v. Bd. of Educ., 368 F. Supp. 2d 313, 326 (S.D.N.Y. 2005) (holding that, independent of decision on merits of parents' FAPE-based tuition claim, "the District is obligated to pay [the student's] tuition at [the private school] for the 2000-01 school year because that school is her pendency placement"); Bd. of Educ. v. O'Shea, 353 F. Supp. 2d 449, 459 (S.D.N.Y. 2005) ("[T]he Parents are entitled to tuition reimbursement on a pendency basis regardless of the merit of their 2001-02 claim . . . . [E]ven if we were to agree with the District and determine that the Parents claim for 2001-02 tuition reimbursement should have been barred by a one-year statute of limitations, the Parents would still be entitled to tuition reimbursement for the 2001-02 school year based on pendency alone."); Bd. of Educ. v. Ambach, 612 F. Supp. 230, 235 (E.D.N.Y. 1985) (holding that although school district's recommended public school placement was judged appropriate by both hearing officer and New York State Commissioner of Education, private school was student's pendency placement, and school district was therefore financially

18

responsible for student's private school tuition through date of Commissioner's final administrative decision).[2]

As these cases illustrate, school districts that have not paid prospectively to maintain a student's pendency placement in a private school will be ordered to reimburse the parents for the cost of maintaining that placement, *even if the parent's FAPE-based tuition claim has already been found to fail on the merits.*  There is no reason, therefore, to reimburse a district for tuition payments that were properly made by the district to support a pendency placement. Second Circuit case law makes it clear that a final determination in the school district's favor on the issue of FAPE does not alter the school district's financial responsibility for maintaining the student's pendency placement.

State courts agree.  Even before <u>Mackey</u>, the Appellate Division, Second Department of the New York State Supreme Court indicated its understanding that a school district had no right to recoup pendency tuition payments.  <u>Pawling Cent. Sch. Dist. v. New York State Educ. Dep't</u>, 771 N.Y.S.2d 572, 575 (N.Y. App. Div. 2004) ("[The school district] concedes that it has paid the tuition for the 1999-2000 school year pursuant to the pendency provision of the IDEA and does not dispute that it cannot recoup the tuition from the parents even if it succeeds in this proceeding [challenging the SRO's determination that school district's IEP was inadequate]." (citation omitted) (citing <u>Schutz</u>)).

The Department relies heavily on <u>Burlington</u>'s language about parents who unilaterally place their children in private school acting at their financial peril.  However, in <u>Burlington</u>, the

---

[2] Well before the Second Circuit's decision in <u>Mackey</u> — ironically, during an earlier iteration of the Mackey family's confrontation with its local school district, -- the late Judge Charles L Bricant announced that only where parents unilaterally change a child's placement would they run any financial risk.  <u>Mackey v.  Arlington Cent. Sch. Dist.</u>, 86 F. Supp. 2d 364, 367 n.9 (S.D.N.Y. 2000).

court held only that parents act at their financial peril when they unilaterally remove a child from his pcndcncy placement in public school in order to enroll him in private school: "If the courts ultimately determine that the IEP proposed by the school officials was appropriate, the parents would be barred from obtaining reimbursement *for any interim period in which their child's placement violated Section 1415(j)[the Act's pendency provision]."* Id. at 369-71. (Emphasis added); "Parents who unilaterally *chunge their child's placement during the pendency of review proceedings,* without the consent of state or local school officials, do so at their own financial risk." Id. at 373-34.

Here, the facts are exactly the opposite. In this case, the child's pendency placement was private school at public expense. S.S. did not move her child in violation of the pendency rules during the due process proceedings. Read literally, Burlington does not say, or even suggest, that parents who exercise their due process rights in full compliance with the pendency rules run any risk that they will have to reimburse the school district for tuition expended while the impartial hearing proccss runs its course.

The Department contends that Burlington should be read broadly, to hold that whoever ultimately loses in the challenge to the IEP must bear ultimate (albeit not interim) financial responsibility for the cost of private school tuition during the pendency. But it is *IDEA* that is to be read broadly and in a way that effects its remedial goals: a free and appropriate education for cvery disabled child; parental involvement in decision-making about the child's education; and the right to review of a school district's recommendation before any change can be made in the child's school setting. If read as urged by the Department, Burlington would hold that parents excrcise their Congressionally-granted due process rights at thcir financial peril. I cannot agree that this was what either Congress or the Supreme Court intended.

The Department sees no reason why parents like those in <u>Burlington</u>, who unilaterally change their child's placement during the pendency of due process proceedings, should do so at their own financial risk, while parents who maintain their children in a private school pendency during due process proceedings are entitled to taxpayer financing of their child's stay-put placement, even if they should have accepted the district's IEP.  In fact, there are sound reasons for treating parents who change a child's placement before a dispute over an IEP is resolved differently from parents who comply with IDEA's stay-put provision. Ultimately, however, the reason why it makes sense to treat these two sets of parents differently is that Congress made a policy choice "that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." <u>Mackey, supra</u>., 386 F.3d at 160-61.  That being so, there is nothing unjust about requiring parents who have chosen to violate this explicit policy choice to run the financial risk of their unilateral decision, while allowing parents who conform to the stay-put rules (like S.S.) not to be penalized for exercising their due process rights.

Because Second Circuit law on this point appears to be settled, the law in other circuits is irrelevant.  However, it bears noting that (as the Department recognizes), no court has explicitly granted a school district's application for reimbursement of pendency tuition on the ground that the parents lost their due process challenge. The Ninth Circuit, as well as district courts in the Third, Seventh and D.C. Circuits, have all held that school districts have no right under IDEA to recoup the cost of maintaining a student's pendency placement from the parents. <u>Clovis Unified Sch. Dist. v. California Office of Admin. Hearings</u>, 903 F. 2d 635 (9th Cir. 1990) (school district and state are responsible for cost of student's placement during court review proceedings

regardless of which party prevails in appeal); <u>District of Columbia v. Jeppsen</u>, 468 F. Supp. 2d 107, 112 (D.D.C. 2006), <u>remanded on other grounds</u>, 514 F. 3d 1287 (D.C. Cir. 2008) (requiring parents who lose in due process proceedings to reimburse school district for private school tuition paid under the stay-put provision is "wholly inconsistent with the intent and spirit of the provision itself."); <u>Aaron M. v. Yomtoob</u>, No. 00 Civ. 7732, 2003 WL 22836308, at *7 (N.D. Ill. Nov. 25, 2003) ("Parents who maintain their child's stay-put placement should not be required to reimburse a school district for stay-put expenses even if the proposed IEP is found to be appropriate).

The First Circuit long ago suggested that recoupment might be appropriate in the circumstances presented here. <u>Doe v. Brookline Sch. Comm.</u>, 722 F. 2d 910, 921 (1st Cir. 1983). But in <u>Rome Sch. Comm. v. Mrs. B.</u>, 247 F. 3d 29, 31 (1st Cir. 2001), the First Circuit declined to authorize reimbursement of tuition paid during a pendency, saying: "Reimbursement is a different question than the merits of the IEPs. Indeed, the IEPs proposed for the 1998-99 and 1999-2000 school years could have been adequate, but [the parent] still would not have to reimburse [the school district] the tuition money it paid for those years." And district courts in the First Circuit have held that parents who unilaterally choose to send their children to private school while challenging a proposed IEP are not entitled to reimbursement for tuition expenses incurred during the pendency of administrative proceedings "unless the private school was the 'then-current placement' or the parents succeed in their challenge to the IEP. <u>See</u>, *e.g.*, <u>T.B. v. Warwick Sch. Dept.</u>, No. Civ.A. 01-122T, 2003 WL 22069432 at *7 (D. R.I. June 6, 2003). Therefore Doe – the only case on which the Department relies – offers no authority for the argument it makes.

Finally, the Department argues that the Spending Clause of the United States Constitution

supports its claim that parents must repay pendency tuition payments when the merits of the case are finally decided in the school district's favor. This argument lacks merit. for the reasons set forth at length by S.S. in her opposing brief – from which the court borrows liberally.

Under the Spending Clause of Article I, § 8, cl. 1, Congress may condition receipt of federal funds upon compliance with a statute's directives. South Dakota v. Dole, 483 U.S. 203, 206 (1987); Fullilove v. Klutznick, 448 U.S. 448,474 (1980). The affirmative obligations imposed upon state and local educational agencies by the IDEA, as a Spending Clause statute, Schaffer v. Weast, 546 U.S. 49, 51 (2005) must be stated unambiguously in the statute, Pennhurst State Sch. and Hosp. v. Halderman, 451 U.S. 1, 17 (1981), or through judicial interpretation, Forest Grove School District v. T.A., _ U.S._, No. 08-305, 2009 WL 1738644, at *9 (June 22, 2009); Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 175–76 (2005).

The Department does not dispute that it is financially obligated to maintain the student in the last agreed upon placement during the pendency of due process proceedings under §1415(j) of the IDEA. As to that obligation, at least one federal court has roundly rejected a Spending Clause challenge. See County Sch. Bd. v. R.T., 433 F. Supp. 2d 692,708–14 (E.D. Va. 2006).

> But the DOE makes a different claim: It says that if it is legally foreclosed from suing students' families for recoupment of pendency payments, it should have been notified that it lacked that remedy . . . .The DOE's argument is stated in conclusory fashion with little analysis; yet it must fail, because the DOE has in fact had ample notice that it is foreclosed from such a claim.

Second Circuit case law provides unambiguous notice satisfying any Spending Clause concerns. At least since 2004, when the Mackey Court of Appeals ordered parents reimbursed for private school tuition even though they lost their due process challenge for the year at issue, the Department has been on notice that controlling law forecloses a claim for pendency recoupment, even after a final decision has been rendered in favor of the school district on the

merits of the parent's tuition claim. That notice was reinforced by this Court's decision in L.P., awarding parents pendency tuition reimbursement after ruling that their FAPE-based tuition claim ultimately failed under the three-prong Burlington test. Arlington Cent. Sch. Dist. v. L.P., 421 F. Supp. 2d 692 (S.D.N.Y. 2006).

The Department cites Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291 (2006), in support of its Spending Clause claim. But issue there presented— whether a school district had to pay expert witness fees to prevailing parents in impartial hearings, 548 U.S. at 293–94, — plainly involved an affirmative obligation that resulted in direct fiscal consequences to the district. This case, by contrast, does not.

The Supreme Court has held that a Spending Clause analysis is not applicable when the statutory provision complained of imposes no affirmative obligation on the recipient of federal funds. See Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 534 (2007) (rejecting Spending Clause challenge raised by school district, stating: "Our determination that IDEA grants to parents independent, enforceable rights does not impose any substantive condition or obligation on States they would not otherwise be required by law to observe."); see also Forest Grove, 2009 WL 1738644, at *9 (rejecting Spending Clause challenge raised by school district to availability of tuition reimbursement remedy for student who had not previously received special education and related service under authority of public agency. In light of these cases, it is highly doubtful that the notice the Department says it should have been given – that it cannot recoup pendency tuition payments from parents who lose due process challenges under IDEA – would be required under the Spending Clause.

Indeed, in light of these cases, it is questionable whether a Spending Clause analysis is implicated by this case at all. Failing to authorize recoupment of pendency payments where the

24

school district prevails at the end of the case does not impose an affirmative obligation.  The Department cites no authority to support its claim that the Spending Clause is violated when an agency that makes payments required by a statute is not explicitly put on notice that it lacks the right to recoup those funds.  The Department merely asserts, in effect:  "We were notified of what we have to expend [by virtue of the pendency rules], but we should also have been notified that we cannot get that money back."  It is a stretch to say that the *absence* of a right to recoup statutorily-mandated expenditures is "an affirmative obligation" imposed by a statute, which would trigger Spending Clause notice requirements.

The Department also cites § 1412(a)(10)(C) of the IDEA in support of its Spending Clause argument.  But its argument confuses the IDEA's tuition reimbursement and pendency provisions.  It is also foreclosed by the Second Circuit Court of Appeals' decision in Schutz, where the Circuit rejected a school district's claim that § 1412(a)(10)(C) precludes an award of pendency tuition reimbursement under § 1415(j), stating: "§ 1412(a)(10)(C)(ii) is addressed to those situations where the parents have not yet successfully challenged a proposed IEP." Schutz, supra., 290 F.3d at 484.   Here, as in Schutz, the school district's proposed reading of § 1412(a)(10)(C) "would eviscerate the very protection Congress sought to provide through the enactment of § 1415(j)." Id.

Accordingly, this court rejects the Department's contention that the absence of a right to reiinburscment following an unsuccessfully parental due process challenge violates the Spending Clause.

For all of the above reasons, the Department's motion for summary judgment on its claim for reimbursement is denied, and S.S.'s motion to dismiss the complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6), is granted

### D.  All Claims Asserted Against the Cooke Center Are Dismissed

### 1.  Reimbursement for Cooke under the IDEA

A claim against a private school for reimbursement under IDEA by an educational

agency is unprecedented and beyond the contemplation of the statute.

First of all, the factual predicate for the Department's argument is simply wrong.

The Department reads the contract between Cooke and S.S. to forbid the parent from accepting

the Department's offer of a public school placement.  It argues that equitable principles – which

ultimately control who bears the cost of the child's private school tuition if the district offered

him a FAPE, <u>see</u> <u>Burlington</u>, <u>supra</u>., 471 U.S. at 374, – require making the private school liable

to the district because that contractual violates public policy and smacks of collusion.

But this argument is premised on a misreading of the contract.  In fact, as explained

above, the contract allows the parent to withdraw her child at any time should an acceptable

placement be forthcoming, without suffering any financial penalty at all!  There is nothing

inequitable or collusive about the terms of the agreement between the parent and the private

school.  The fact that the a parent who has already turned down a proposed public school

placement must represent that he/she will not change that decision is a perfectly appropriate

provision to protect the interests of a private school like Cooke – not a collusive tactic for

sticking a public school with the cost of private school tuition. But it is inapplicable on the facts

of this case.

The Department's contention that contracts like the one between Cooke and S.S. would

undermine the collaborative process between parents and school districts is completely dispelled

by the facts of this case.  S.S. fully collaborated with the Department in the placement process;

she sat on the CSE and she explored the placement offered by the Department, even after the new school year started.[3]

The legal basis for a reimbursement claim against the private school is non-existent. IDEA contemplates that expenses incurred during the pendency of a due process challenge will be paid by one of three actors: the parents, the school district or the state. T.H. v. Bd. of Educ. of Palatine Cmty. Cons. Sch. Dist. 15, No. 98 Civ. 4633, 1998 WL 850819, at *6 (N.D. Ill. Dec. 3, 1998). It does not contemplate that a private school offering services to a child – especially pursuant to a pendency placement – should run the risk that it will ultimately be on the hook for the cost of its work. That is understandable. No rational private school would ever allow itself to be put in such a position. Indeed, the very possibility that the private school could end up footing the bill for the child's pendency tuition would completely upend the Congressionally-mandated pendency system. Any time a public school devised an IEP for a child that involved a public school placement, a rational private school would refuse to reenroll that child during a due process challenge – unless the parents had the wherewithal to reimburse the private school for the cost of pendency tuition and agreed to do so no matter what. That is plainly not what Congress contemplated when it mandated that every child remain in place until due process challenges to a proposed placement could be heard.

In the end, all claims under IDEA are equitable in nature, and what would be inequitable would be a ruling that makes a private school run the risk that it would not be compensated for the cost of services actually provided. Nothing in IDEA, or in any case interpreting that statute, suggests that private schools are supposed to provide services *gratis*.

---

[3] S.S. could not have explored the placement earlier, since it was not offered until the last day or so of the preceding school year, and the principal of the school put off her request for a meeting. It was not possible to see the classroom in action until September of 2007.

## 2.        Unjust Enrichment

The Department also brings a claim against Cooke for unjust enrichment.  This claim fails for two reasons.

First, it is preempted by IDEA, which specifies which party bears the burden of private school tuition during any period when private school is a child's pendency placement.  In the context of reimbursement, both parties concede that only one federal court has considered a claim for unjust enrichment brought by a district against a student/parent – Lauren W. v. Deflaminis, No. 03 Civ. 1526, 2005 WL 2989712 (E.D. Pa. Jul. 20, 2005) – and that court refused to order reimbursement. holding that any such order "would be contrary to the letter and the spirit of the IDEA." Id. at *4. .

Second, even if the claim were not preempted, no claim for unjust enrichment would like, because it would be unjust to force Cook to provide services to a child without receiving compensation.

To succeed on a claim for unjust enrichment. under New York law, a plaintiff must show: "(1) the defendant was enriched; (2) at the plaintiff's expense; and (3) equity and good conscience militate against permitting the defendant to retain what the plaintiff seeks to recover." Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004), cert. denied, 544 U.S. 949 (2005).  Here, equity and good conscious suggest that Cooke ought to retain what it was paid, because it actually rendered services and so was entitled to compensation.  Numerous cases have so held.  In Universal Acupuncture Pain Serv., P.C. v. Slate Farm Mut. Auto. Ins. Co., 196 F. Supp. 2d 378, 378-388 (S.D.N.Y. 2002). the court rejected an unjust enrichment claim against "duly qualified acupuncturists" who had rendered services to the insureds of State Farm. ld. at 378.  Despite alleged wrongdoing by the acupuncturists, State Farm was deemed not

28

entitled to restitution because the insureds received the services they expected.  Id.  Similarly, in N.Y. Cent. Mut. Fire Ins. Co. v. 563 Grand Med., P.C., a court declined to order reimbursement when the "defendants rendered services, billed for those services and were paid for the services rendered." No. 9744-03, 2004 WL 2008605, *5 (NY. Sup. Ct. Aug 23, 2004).   The court reasoned that the plaintiff sufficiently received the services for which he paid and to order reimbursement would be to unjustly enrich the plaintiff.   Id.

In the instant case, the pendency payments made by the Department of Education were used to fund Sm.S's education for the duration of the 2007-2008 school year.   In exchange for these payments, Cooke provided Sm.S the necessary services for the duration of the year.   Since S.S. was free to leave Cooke in favor of a public school placement without penalty, Cooke is, in good conscience, entitled to retain this benefit.

## CONCLUSION

For the foregoing reasons, the motions to dismiss by defendants Cooke and S.S. are granted.   Therefore, the Department of Education's cross motion for summary judgment is denied as moot.   The Clerk of the Court is instructed to remove the motions at docket numbers 22, 26, and 31 from the Court's outstanding motion list and close the case.

This constitutes the decision and order of the Court.

Dated: March 17,  2010

_____
U.S.D.J.

BY ECF TO ALL PARTIES

29